*STAFF RELIEF, Inc.*
Appellant
*vs.*
*Delmar Ray POLACCA*
Appellee
In the Supreme Court of the Navajo Nation

No. SC-CV-86-98

August 18, 2000

Pernell W. McGuire, Esq., Flagstaff, Arizona, for Appellant.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for Appellee.

Before YAZZIE, Chief Justice, and AUSTIN and MORRIS, Associate Justices.

Opinion delivered by YAZZIE, Chief Justice.

This is an appeal from a contempt judgment by the Tuba City District Court. Delmar Ray Polacca ("Polacca") is a medical technician who had been previously employed by the Indian Health Service ("IHS") facility in Tuba City, Navajo Nation (Arizona). It appears that he lost his job there due to "downsizing" policies of the U.S. Government. The Indian Health Service responded to staff

needs by contracting with private firms to recruit medical personnel, and Staff Relief, Inc. ("SRI") is one such firm. It is what is known as a "head hunter," which is a firm which recruits and hires professional personnel under contract with an employer.

While the full facts of this dispute were not developed well in the briefs, at oral argument the Court learned that at one point, Polacca was working at the IHS facility in Chinle when he received a call from SRI, offering him a job at the Tuba City IHS facility. Polacca was working for another contract firm, and when he said that he must give a two week notice before he could accept the SRI offer, it withdrew the offer of employment. A charge with the Office of Navajo Labor Relations followed, and after its investigation, Polacca filed a complaint with the Navajo Nation Labor Commission ("Commission"). That was the beginning of the bizarre procedural history of this case.

When SRI received a copy of the complaint Polacca had filed with the Commission and a notice of hearing, it mailed an answer to the Commission. It was lost or mislaid, but SRI received another notice of hearing, rescheduling the case, without any indication an answer had not been received. As SRI anticipated attending a hearing, Polacca filed a motion asking the Commission to enter a default judgment for failure to file an answer. He did not serve a copy on SRI. The Commission granted a default judgment, although its rules do not provide a specific procedure to do so. SRI then took an appeal to this Court, but it was dismissed for failing to perfect the appeal by filing the agency record. In the meantime, SRI asked the Commission to reconsider its default judgment on the grounds that Polacca, a Hopi, did not have standing to file a complaint with the Commission; an indispensable party was absent from Commission proceedings; and that SRI had in fact filed an answer. The Commission did not act on the motion pending appeal because it lost jurisdiction while the case was on appeal. When the appeal was dismissed, the Commission ruled upon the motion to reconsider, denying it.

The Commission order required SRI to "reinstate" Polacca as an employee, and while it ordered the payment of back pay and wages upon "reinstatement," the Commission order did not set out the amount of damages. Polacca filed an action in the Tuba City District Court to enforce the judgment, and the court clarified the Commission order by ordering that Polacca be "hired," and setting dollar figures for back pay and wages. SRI did not appeal from that judgment. SRI also did not obey the order of the Tuba City District Court. Accordingly, Polacca filed a second enforcement action, and the district court found that SRI was in contempt of court, and again ordered the payment of back pay and accrued constructive wages. This time, SRI took an appeal and perfected it.

On appeal, SRI claims: (1) The district court erred in enforcing a void Commission order because an indispensable party was not before the Commission; (2) The Commission did not have subject matter jurisdiction

over either Polacca's claim or SRI because Polacca, a Hopi, could not file a labor claim with the Commission, and because SRI is a "non-Indian" business and the Commission did not have jurisdiction over it; and (3) The district court should have granted SRI's request to reopen the Commission judgment.

We will deal with the first two assignments of error in a summary manner, because they are clearly without merit. The Court will focus upon the third assignment of error in greater detail, because it raises a fundamental concern regarding administrative quasi-judicial adjudication in the Navajo Nation.

## I

At first, SRI claimed that the IHS was an indispensable party because SRI's contract allowed it to recruit prospective medical technician employees, but the IHS had to do the actual hiring. On appeal, SRI claims that it could not hire Polacca in response to the Commission's order because one Robert Senecal had to approve any hire on behalf of the IHS. Senecal was a former SRI employee who later got a contract with the IHS to perform the functions he had done for SRI.

Senecal is not an "indispensable" party to the Commission proceeding. *See*, Nav. R. Civ. P. 19 (a). The attorney for SRI told this Court at oral argument, SRI made an employment offer to Polacca, and that was the basis of his complaint to the Commission. SRI could not make an employment offer unless it had the authority to do so, and its attorney tells us that but for Polacca's demurrer to the offer that he could not take it without giving two weeks notice to his current employer, he would have had the job. Senecal's approval was not essential to the dispute before the Commission.

## II

SRI contends that Polacca did not have standing to file a complaint before the Commission, and accordingly, it did not have subject matter jurisdiction over the labor claim. That is correct. For reasons beyond the knowledge of this Court, the drafter of the Navajo Preference in Employment Act ("NPEA") included spouses of Navajos and Indians from other Indian nations in the protected classifications of the Act, but provided that only Navajos could file labor complaints with the Commission. 15 N.N.C. §§ 610(B), 614 (1995).

We rectify that shortcoming by ruling that under basic principles of equal protection of law, any person who is injured by a violation of NPEA may file a claim with the Commission. We do so for two reasons. First, this Court may cure a defective statute which otherwise denies equal protection of the law by broadening the statute's coverage. *Califano v. Westcott*, 443 U.S. 76 (1979)(where a statute is defective because of under inclusion, a court may extend the coverage of the statute to include those who are aggrieved by the exclusion); *Welsh v. United States*, 398 U.S. 333, 361 (1970) (Justice Harlan concurring); *People v. Liberta*, 64 N.Y.2d 152, 170 (N.Y. App. 1984); *see also*, 3 R. ROTUNDA, J. NOWAK, TREATISE

ON CONSTITUTIONAL & LAW: SUBSTANCE PROCEDURE § 18.2 at 211-212 (3rd ed. 1999) (equal protection-underinclusive statutes). We do so because otherwise, we would have to rule that the restricted remedy is invalid as a whole and thus deprive the Commission of any jurisdiction. That would be a draconian decision which would do far more harm than good. Second, we extend the remedy to all individuals employed within the Navajo Nation to effectuate the Navajo Treaty of 1868. That is, Article I of the Treaty recognizes the Navajo Nation's reserved power to admit non-Navajos to its territorial jurisdiction, and thus its protection, or to deny entry. Once an individual obtains the right to enter the Navajo Nation, due process of law requires that the Navajo Nation extend the protection of its law to all individuals. The Navajo Nation may, at its option, deny certain benefits or privileges to non-Navajos without offending equal protection of the law, but as we have noted before, the NPEA is a general labor code. *Arizona Public Service Co. v. Office of Navajo Labor Relations*, 6 Nav. R. 246, 248 (Nav. Sup. Ct. 1990). As such, it must be read to protect all employees within the Navajo Nation where NPEA provides protection in employment. Accordingly, we hold that on remand, Polacca has standing to pursue his claim against SRI.

The contention that the Navajo Nation has no jurisdiction over SRI because it is a "non-Indian" with no consensual affiliation with either the Navajo Nation or individual Navajos is completely without merit. SRI has a contract with the IHS to employ medical professionals, and the IHS is itself required to give Indian preference in employment under the Indian Self- Determination and Education Assistance Act of 1975 (as amended). 25 U.S.C. § 450e(b). That Act also requires all programs funded with federal 'Indian" grant monies to extend Indian preference in hiring. *Id.* Both Navajo Nation and federal law offer Indian preference in employment, but Navajo Nation law gives a specific remedy for noncompliance. 15 N.N.C. §§ 604(A), 610 (1995). While the NPEA is an exercise of the Navajo Nation's inherent power to protect employees, that is also a power which is recognized by federal law. *See* 25 U.S.C. §450e(b) (c) (recognition of Indian nation preference statutes). The IHS is one of those federal programs that serve Navajos where entry is permitted under Article I of the Treaty of 1868, and but for the fact that the mission of the IHS in Navajo Indian Country is to serve Navajos, SRI would not have a contract. The consensual ties SRI has with the Navajo Nation are sufficient to support jurisdiction by consent, and the overriding authority of the Navajo Nation to protect its workers is essential to the economic interests of the Navajo Nation.

We note, as we have noted before, that actual unemployment (counting children and individuals unable to work for various reasons) in the Navajo Nation approaches 70%. Employment is a vital right, and the power to regulate employment relations is essential to the Navajo Nation's economic interests. Even if the Commission did not have subject matter jurisdiction to make its order in this case because Polacca is not a Navajo (although his spouse is Navajo), it will have that jurisdiction when this action is remanded. All individuals under

the protection of the Navajo Nation have, and shall enjoy, the right of access to remedies at law, whether they are judicial or quasi-judicial.

## III

We now come to the central issue in this case. SRI urges us to apply Rule 60 of the Navajo Rules of Civil Procedure to reopen the Commission judgment. That we cannot do. Rule 60 was promulgated using this Court's statutory rule-making authority under Title Seven of the Navajo Nation Code. The Commission's procedural rules were promulgated under its specific statutory authority. We cannot apply the court system's procedural rules to proceedings before an administrative agency because that would violate the doctrine of separation of powers. 2 N.N.C. §1 (1995). That would also interfere with the quasi-judicial independence of the Commission and we will not interfere with the operations of an administrative agency with primary statutory jurisdiction.

However, we must go further to examine the Commission's final default order using principles of due process of law. There are several considerations. The first is that while SRI was properly served with a copy of the complaint and a notice of hearing, it denies due process of law to ask that the Commission deny the basic right to a hearing without notice to SRI. If SRI could be found for purposes of serving a complaint, it could be found to serve a motion for a default judgment. Second, as we noted in our recent decision in *Loley v. Department of Employment and Training*, 7 Nav. R. 406 (Nav. Sup. Ct. 1999), due process of law requires a hearing on a default judgment where damages are not liquidated and stated in a complaint for purposes of a default judgment. Third, the Commission's rules did not permit the procedure followed in this case of granting a judgment without notice and terminating a hearing which had already been scheduled and a notice of it had been sent to SRI. Rule 9 of the Commission's Rules warns respondents that "[f]ailure to file a written answer shall be deemed an admission of the allegations of the Complaint." While Rule 9 supports a default procedure (as we noted in *Loley, id.*, the Commission rules currently permit a default only for nonappearance at the hearing. *See* Rule 11 (J), Nav. Nat. Labor Comm. R. Proc. If due process means nothing else, it means that a governmental agency must follow its own rules. *Mustach v. Navajo Board of Election Supervisors*, 5 Nav. R. 115, 116-119 (Nav. Sup. Ct. 1987). In this case, the Commission rules provide for a default upon nonappearance at a hearing, and we have approved the inherent power to enter a default for failure to obey the Commission's procedural orders, but there is no provision for the kind of default order entered here. We find that the Commission's proceedings violated due process of law and that accordingly, its final order was void because of a lack of fundamental procedural fairness.

We note, with great annoyance, SRI's tardy and negligent approach to this case. Aside from any question of *res judicata*, issue preclusion, collateral estoppel, or any other doctrine to bring finality to litigation, basic principles of

equity should require us to shut the courtroom doors to SRI. However, equity is designed to remedy situations, such as this, where justice must be done. One of the most essential aspects of justice is the right to have one's day in court. That right may be denied for litigant negligence. There is no due process right to a hearing. There is only a right to an opportunity for a hearing, which may be surrendered through neglect. In this case, the right has to do with expectations. SRI told us that it did not know the answer was not received. It says that it got two notices of hearing, and it was prepared to attend a scheduled hearing. An adjudicative body cannot tell a party one thing and then do another which is wholly inconsistent and which denies a hearing when a party anticipates attending one. We decide that fundamental fairness should override SRI's neglect and delay in this particular situation.

However, equity requires this Court to consider Polacca's situation. His attorney told us that he has been unemployed for a long period of time. SRI ignored two contempt orders and still refuses to obey orders for it to give Polacca back pay. We see that SRI is a foreign corporation and the possibility that Polacca might have to take his judgment outside the Navajo Nation for satisfaction. We must balance the equities and attempt to address the fair treatment to which Polacca is entitled. Accordingly, we will require SRI to pay a price for its day in court. On remand, SRI must post a bond with the clerk of the Tuba City District Court in the sum of $100,000 to satisfy any future Commission order in Polacca's favor. In addition, we will require that SRI pay Polacca's attorney's fees for this appeal in a sum to be determined upon the filing of a bill of costs to this Court which sets out the legal services rendered for Polacca in this appeal, the time committed to those services, and the reasonable value of those services. We note, for that purpose, that Mr. Lawrence A. Ruzow, Polacca's attorney, rendered excellent services in this appeal. Polacca's position fails, not because of any lack of advocacy or merit on his part, but because of the fundamental overriding interest of the Navajo Nation in assuring fair hearings in quasi-judicial administrative proceedings.

## IV

The judgment of the Tuba City District Court is reversed, and this cause is remanded to the Navajo Nation Labor Commission for further proceedings on the initial complaint. SRI shall post a $100,000 bond with the Tuba City District Court, with adequate sureties or otherwise, as a precondition to any hearing before the Commission, and it shall pay Polacca's attorney's fees on appeal. Polacca shall file with this Court, within thirty days of the date below, a bill of costs showing a reasonable amount of attorney's fees charged to him for this appeal.